# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 12-214 ADM/JJG

McHarding Degan Galimah,

        Defendant.

_____

Andrew S. Dunne, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff United States of America.

Reynaldo A. Aligada, Jr., Esq., and James S. Becker, Esq., Office of the Federal Defender, Minneapolis, MN, on behalf of Defendant McHarding Degan Galimah.

_____

## I. INTRODUCTION

On February 12 through 14, 2013, Defendant McHarding Degan Galimah was tried by jury before the undersigned United States District Judge in the above-captioned matter. The jury found Galimah guilty of smuggling firearms from the United States in violation of 18 U.S.C. § 554. Following the conclusion of the trial, Galimah brought a Motion for New Trial [Docket No. 52] pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the reasons set forth herein, Defendant's Motion is denied.

## II. BACKGROUND[1]

Over the course of about a year, from April 2009 to May 2010, Galimah purchased 12

---

[1] The underlying facts will be fully amplified by the trial record. Only facts pertinent to the instant Motion will be discussed here. Because the trial testimony has not yet been transcribed, the Court is relying on its notes of the testimony.

handguns through five separate transactions. The handguns were of comparable calibers; seven were of the same make and model. Although Galimah purchased the handguns at different gun shows in Minnesota, each transaction was with the same seller, The Madden Group, a Federal Firearms Licensee ("FFL") co-owned and operated by Holly Madden. For each transaction, Galimah and Madden completed a firearms transaction form, which required both of them to review, complete, and sign different sections of the same document. Each form required Galimah to acknowledge a section of the form titled "**Exportation of Firearms**," which stated that the State or Commerce Departments "may require you to obtain a license prior to export." Madden also conducted phone-based background checks for each transaction as required by the Bureau of Alcohol, Tobacco, and Firearms as part of maintaining FFL status. Bernard Cooper, a friend of Galimah's, accompanied him on each gun show visit and also purchased firearms.

On three separate occasions between November 2010 and April 2012, Galimah, an emigrant born in Liberia, sent cargo shipping containers to Monrovia, Liberia. Each container, about the size of a semi-truck cargo trailer, contained various goods ranging from vehicles to mundane household items. Galimah rented the use of these cargo containers and arranged for their shipment through Harry's Travels Electronics and Shipping, a Minneapolis business owned and operated by Simmarjit Singh. For each shipment, Galimah completed various shipment forms, including declarations in which he listed the shipped items in considerable detail. Galimah sent all 12 of the handguns he purchased from The Madden Group to Liberia in two of these shipments, and he did not declare them on the forms.

Sometime after Galimah sent his shipments to Liberia, the Homeland Security Investigations (HSI) directorate of the United States Immigration and Customs Enforcement

agency began investigating Galimah. On April 17, 2012, Special Agent Heidi Whereatt interviewed Galimah at his then residence in Coon Rapids, Minnesota. During the interview, Galimah stated that he had purchased 10-12 firearms at various gun shows, and that Cooper had accompanied him. At trial, Whereatt testified—and Galimah admitted—that Galimah initially lied to HSI. Galimah told HSI he had kept 3-4 firearms in a storage locker and had given 1-2 firearms to Cooper. He also stated that he shipped just 2 firearms to his home in Liberia.

HSI agents next interviewed Cooper at his place of business, a car garage located in Minneapolis, Minnesota. During the agents' interview, Galimah arrived on site. When Galimah saw the agents on site, he departed.

On April 30, 2012, Whereatt and other HSI agents interviewed Galimah a second time. At this interview, Galimah admitted to shipping all 12 of his handguns to Liberia in two separate shipments, though he could not recall their exact dates. Galimah stated he shipped the firearms by placing them at the bottom of large shipping barrels and then placing other items over them. According to Whereatt's testimony at trial, Galimah told HSI he knew the guns would be seized by United States Customs if they were discovered upon inspection, and that he had also intended to avoid paying duties and customs.

At trial, Galimah offered a different explanation of his actions. Having previously worked as a security guard in Minnesota and recognizing a need for security firms in Liberia, Galimah testified he intended to start a security company in Monrovia. To that end, Galimah purchased the 12 handguns along with other equipment to outfit his operations. In addition, Galimah testified about his concern that Liberian customs authorities would seize the guns and only surrender them after the payment of a bribe.

Galimah's testimony contradicted Whereatt's testimony. Galimah testified that on April 30, 2012, he told HSI he was afraid <u>Liberian</u> customs would seize the guns, not <u>United States</u> customs. Similarly, Galimah testified he told HSI he was trying to avoid the payment of bribes to Liberian customs agents; he was not trying to avoid paying United States taxes or duties. Galimah also testified that he did not realize that the export of firearms was regulated by the United States until he visited an informational booth setup at a local police station, and that he did not make this visit until after he had already shipped his handguns.

The Government called Whereatt in rebuttal to Galimah's testimony, and she reaffirmed her earlier testimony reiterating Galimah's statement of his intent to avoid United States laws and regulations.

In its instructions to the jury, the Court stated the crime charged against Galimah had three elements:

> <u>One</u>, the defendant exported or sent firearms from the United States to Liberia;
> <u>Two</u>, the defendant's exportation or sending of firearms was contrary to any law or regulation of the United States.
> <u>Three</u>, the defendant knew the exportation or sending of firearms was contrary to any law or regulation of the United States. It is not necessary for the Government to prove that the defendant knew the specific law or regulation that was governing his conduct. Instead, the Government must prove that the defendant knew his act was one which the law forbids, not that he knew the precise law or regulation forbidding his conduct.

Jury Instr. No. 16 [Docket No. 43]. Neither party objected to the above language. However, in the same instruction, the Court further explained the third element of the offense to the jury:

> The element of knowledge may be inferred if the defendant deliberately closed his eyes to learning whether the exportation of firearms from the United States was contrary to any law or regulation of the United States. You may not find the defendant

4

> acted knowingly if you find he was merely negligent, careless, or mistaken as to whether the exportation of firearms from the United States to Liberia was contrary to any law or regulation of the United States.

Id. (the "Contested Instruction"). Galimah objected to this portion of Jury Instruction No. 16 before it was read, and the Court acknowledged but overruled his objection. On February 14, 2012, the jury returned its verdict against Galimah. On March 14, 2013, Galimah brought this Motion for a New Trial under Rule 33.[2]

### III. DISCUSSION

**A. Applicable Standard of Law**

Rule 33 of the Federal Rules of Criminal Procedure allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." This standard "requires the district court to balance the alleged errors against the record as a whole and evaluate the fairness of the trial." United States v. McBride, 862 F.2d 1316, 1319 (8th Cir. 1988); see also United States v. Eagle, 137 F.3d 1011, 1014 (8th Cir. 1998).

**B. Use of Deliberate Ignorance Instruction for Knowledge of the Law Element**

In his motion, Galimah argues the Court improperly instructed the jury regarding deliberate ignorance. Galimah agrees that knowledge of the law was properly included as the third element of the charged offense, but argues a deliberate ignorance explanation of the kind in the Contested Instruction is generally only appropriate when factual knowledge is required. In those instances where an offense requires a defendant to know of his action's illegality, Galimah argues the law requires proof of actual knowledge; deliberate ignorance does not suffice.

---

[2] Galimah timely moved for and received an extension within which to file his Motion. See Order, Feb. 28, 2013 [Docket No. 51].

Galimah's justification for this distinction is the risk that a naive or unaware person might be convicted for the "lesser mens rea of negligence—punishing the defendant for what he should have known." United States v. Newell, 315 F.3d 510, 528 (5th Cir. 2002).

The Government responds that a deliberate ignorance instruction is appropriate whenever knowledge, of either a fact or the law, is at issue and the evidence supports a jury's conclusion that the defendant had either actual knowledge of the illegal activity or deliberately failed to inquire about the activity. The Government cites both exhibits and testimony indicating Galimah either knew his exportations of firearms were contrary to law or that he was presented with strong evidence of its illegality but failed to inquire further.

Discussed below are two points of law which ultimately lead to the conclusion that the Contested Instruction was appropriate in this case: (1) § 554 requires the Government to prove a defendant knew his actions were contrary to the law; and (2) where an offense requires a defendant know his actions are contrary to law, the court may instruct the jury as to deliberate ignorance if the evidence in the case supports it. Ultimately, the evidence in this case supported the Contested Instruction.

**1. Section 554 Requires Knowledge of Illegality**

Courts have only rarely addressed the question of whether § 554 requires knowledge of illegality as an element of the offense. Enacted in 2006, § 554 states:

> **(a) In general.**--Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, **or** receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not

6

more than 10 years, or both.

**(b) Definition.**--In this section, the term "United States" has the meaning given that term in section 545.

18 U.S.C. § 554 (emphasis added). The word "or," emphasized above in subsection (a), "divides this statute into two clauses: the first applying to exporters, and the second to buyers." United States v. Chi Tong Kuok, 671 F.3d 931, 944 (9th Cir. 2012). In this case, the Government charged Galimah under the first clause. See Superseding Indictment [Docket No. 23].

Decisions interpreting § 554, while not precisely on point, have generally agreed that knowledge of the illegality of the exportation is an element of the offense. See, e.g., Chi Tong Kuok, 671 F.2d at 944 (interpreting second clause of § 554 as requiring knowledge that item "was intended for export contrary to U.S. law"); United States v. Bernardino, 444 F. App'x 73, 74 (5th Cir. 2011) (reading § 554 as one whole as opposed to two clauses, but finding statute required defendant to "know that he was dealing with weapons and ammunition that were intended for export, and that their exportation would be illegal").

The Eighth Circuit Court of Appeals has also interpreted a similarly-structured statute and concluded the word "knowingly" modified the entire clause, making knowledge of illegality an element of the offense. See United States v. Marvin, 687 F.2d 1221 (8th Cir. 1982), accord, Liparota v. United States, 471 U.S. 419 (1985). In Marvin, the food stamp statute at issue read in relevant part: "[W]hoever knowingly uses, transfers, acquires . . . or possesses (food) coupons . . . in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall . . . be guilty of a felony . . . ." Marvin, 687 F.2d at 1225 (quoting 7 U.S.C. § 2024(b)(1)). Although the adverb "knowingly" immediately preceded several verbs, the court held that "purely as a verbal matter," the word "knowingly" modified the entire clause, making

7

knowledge of the law a requirement of the offense. Id. at 1226; cf. United States v. Udofot, 711 F.2d 831, 835-36 (8th Cir. 1983) (holding where the word "knowingly" modifies a verb but statute has no reference to "law," "violating the law," or similar language which "knowingly" can be read to modify, knowledge of the law is not required).

Marvin's textual analysis offers guidance here. The adverbs "fraudulently or knowingly" in the first clause of § 554 immediately precede the verbs "exports," "sends," and "attempts to export or send." Nevertheless, the phrase "contrary to any law or regulation of the United States" follows as part of the same clause, meaning the words "fraudulently or knowingly" should naturally be read to modify this language as well. See Marvin, 687 F.2d at 1226. As a result, § 554 requires knowledge of illegality as an element of the offense.

Requiring knowledge of illegality for a violation of § 554 is also consistent with courts' interpretation of a corollary statute. While § 554 prohibits illegal exports, 18 U.S.C. § 545 (referred to here as the "Import Statute" for clarity), originally enacted in 1948, prohibits the smuggling of goods into the United States. Congress amended the Import Statute in the same legislation enacting § 554; the second paragraph of the Import Statute closely resembles the language in § 554; and § 554 cross-references the Import Statute for its definition of "United States." See United States v. Alghazouli, 517 F.3d 1179, 1186-87 (9th Cir. 2008). Like § 554, courts have held the Import Statute requires the defendant to know his actions are prohibited by the law.[3] See, e.g., United States v. Bader, 678 F.3d 858, 879 (10th Cir. 2012); United States v.

---

[3] As with 18 U.S.C. § 545 and certain other criminal statutes, a violation of § 554 requires only that the defendant knew the law forbade his actions; it does not require him to know the specific laws or regulations he has violated. See Bernardino, 444 F. App'x at 74; United States v. Brodie, 403 F.3d 123, 147 (3rd Cir. 2005) (collecting examples of similar knowledge requirements); see also Liparota, 471 U.S. at 434 (reaching same conclusion in interpreting food stamp statute).

8

Garcia-Paz, 282 F.3d 1212, 1217 (9th Cir. 2002); United States v. Zhang, 833 F. Supp. 1010, 1019 (S.D.N.Y. 1993). The decisions interpreting the Import Statute further bolster the conclusion § 554 requires knowledge of the law as an element.

**2. Deliberate Ignorance and Knowledge of Illegality**

The deliberate ignorance instruction, sometimes referred to as the "willful blindness," "conscious avoidance," or Jewell instruction, "allows the jury to impute knowledge to [the defendant] of what should be obvious to him, if it found, beyond a reasonable doubt, a conscious purpose to avoid enlightenment." United States v. Hiland, 909 F.2d 1114, 1130 (8th Cir. 1990) (quotation omitted, edit original); see also United States v. Jewell, 532 F.2d 697 (9th Cir. 1976). The purpose of the theory "is to impose criminal liability on people who, recognizing the likelihood of wrongdoing, nonetheless consciously refuse to take basic investigatory steps." Hiland, 909 F.2d at 1129-30 (citation omitted). The deliberate ignorance instruction is appropriate when a "defendant claims a lack of guilty knowledge and there are facts [in] evidence that support an inference of deliberate ignorance." Id. (quotation omitted).

Galimah argues the deliberate ignorance theory is only appropriate when knowledge of a fact is an element of an offense, as opposed to knowledge of the law. He argues "there is a fundamental difference" between an offense requiring knowledge of the law and an offense requiring knowledge of a fact, as knowledge of the law involves legal research and the consultation of statutes while knowledge of a fact involves investigation. Def.'s Mem. Supp. Mot. New Trial [Docket No. 52] 6. But in the context of criminal offenses, the distinction between knowledge of the law and knowledge of a fact is not always useful. What the defendant knew at the time of the offense—whether it be knowledge of his actions' illegality or knowledge of a particular fact—pertains to the defendant's mental state. In either case, the question is thus

9

within the factfinding province of the jury. In other words, even if the question is whether the defendant knew his actions were illegal, the jury will still consider exhibits and testimony to make a determination about the defendant's mens rea. As a result, where a deliberate ignorance instruction would be appropriate for a "knowledge of the facts" element, it may also be appropriate for a "knowledge of the law" element.

Although there appear to be no decisions regarding the theory of deliberate ignorance for knowing violations of § 554, the few courts that have considered the theory in the context of § 545, the Import Statute, have done so based on the facts of the case at hand.[4] It does not appear that any court has held that the deliberate ignorance instruction is always improper for the knowledge of the law element under either § 554 or § 545. See, e.g., United States v. Manghis, No. 08cr10090-NG, 2011 WL 2110212 (D. Mass. May 26, 2011). In Manghis, the parties conducted a bench trial for a § 545 charge which put the defendant's knowledge of ivory importation laws at issue. Id. at *2. Given the facts of the case, the court held it would have considered a willful blindness instruction had the case been tried to a jury; without a jury, the court instead "considered willful blindness as circumstantial evidence of knowing." Id. at *9 n.11; see also United States v. Lopez, 252 F.3d 435, 2001 WL 360732, at *1 (5th Cir. 2001) (unpublished) (finding insufficient evidence to support deliberate ignorance instruction, but affirming as harmless error).

The Government also cites two decisions in which courts of appeal have affirmed the use

---

[4] The Government cites United States v. Lopez, 472 F. App'x 820 (9th Cir. 2012) (unpublished) as a case in which the Ninth Circuit affirmed the use of a deliberate ignorance instruction for a charge under § 554. However, the court affirmed the use of the instruction regarding whether the defendant knew or ignored the "intended destination" of exported ammunition. Id. at 821. As a result, Lopez dealt with knowledge of a fact, and offers no guidance for the issue Galimah raises.

10

of deliberate ignorance instructions when knowledge of exportation laws was at issue. See United States v. Elashyi, 554 F.3d 480 (5th Cir. 2008); United States v. Soussi, 316 F.3d 1095 (10th Cir. 2002). The analysis in Soussi has greater relevance here. In Soussi, the defendant shipped numerous trailers to Libya in violation of the International Emergency Economic Powers Act, 50 U.S.C. § 1701(a), which makes it illegal to "willfully violate[]" any regulations or orders made under the act. Soussi, 316 F.3d at 1097-99. The defendant claimed ignorance of the law, and thus argued he had not willfully violated an Executive Order prohibiting exports to Libya. Id. at 1106-07. The trial court gave a deliberate ignorance instruction to the jury regarding the defendant's claimed lack of knowledge. Id. On appeal, the Tenth Circuit affirmed the use of the instruction, noting key facts: (1) the defendant had received, but claimed not to carefully read, a pamphlet regarding exports to Libya; and (2) several actions by the defendant demonstrated "subjective knowledge of his criminal behavior," including efforts to conceal the trailers' country of origin. Id.

In other cases where knowledge of the law is an element of the offense, courts have similarly decided whether to use a deliberate ignorance instruction on a case-by-case basis. See, e.g., United States v. Quinn, 403 F. Supp. 2d 57, 68 n.11 (D.D.C. 2005) (holding in dicta the Government would have been entitled to deliberate ignorance instruction where defendants recklessly or intentionally disregarded trade regulations); United States v. Dien Duc Huynh, 246 F.3d 734, 737 n.4 (5th Cir. 2001) (affirming use of deliberate ignorance instruction in Trading with the Enemy Act charge); United States v. McMahon, 151 F.3d 1031, 1998 WL 372477, at *10-11 (4th Cir. 1998) (unpublished) (affirming deliberate ignorance instruction for charge of illegally structuring deposits to avoid financial reporting requirements); United States v. Mitrano, 658 F.3d 117, 122-23 (1st Cir. 2011) (affirming use of willful blindness instruction

where defendant argued he was unaware of binding effect of child support order).

## C. Evidence in Galimah's Trial Supported Contested Instruction

The evidence introduced at Galimah's trial warranted the Contested Instruction. Like the defendant in Soussi, Galimah was confronted with warnings about export law, but he also took steps to conceal his actions, further indicating knowledge of the law. During the transactions for his firearms, Galimah signed five forms, each identical, with a bolded section titled "Exportation of Firearms," indicating the export of any firearms may require a license. The very fact that Galimah's gun purchases involved the completion of forms and a short background check could have also indicated that firearms were a regulated commodity. In addition, when Galimah began shipping items through Singh's business, he signed United States Principal Party in Interest (USPPI) Letters of Instruction for which he was required to provide inventories of his shipments. Despite listing numerous other goods in detail, Galimah omitted any mention of firearms from his manifests. The Letters of Instruction specifically cautioned exporters against making false or fraudulent statements, and warned against violating any United States export laws.

Galimah also took actions to conceal his firearms from discovery. He placed his firearms at the bottom of shipping barrels and covered them with other goods, and spread the firearms out across multiple barrels in two shipments. Whereatt testified Galimah told HSI he had shipped the firearms in this manner to avoid having them seized by United States customs during inspection, and that he failed to identify them in his paperwork to avoid paying United States taxes and duties. Although Galimah testified he had instead intended to evade Liberian customs, the jury could have reasonably found Whereatt's testimony more credible.[5] Even if the jury

---

[5] For example, at trial Galimah admitted to lying to HSI about his shipment of firearms in his first interview with agents on April 17, 2012.

found Galimah's testimony credible, Galimah's testimony revealed his knowledge that countries had an interest in controlling the export and import of firearms. The evidence at trial could have reasonably led a jury to conclude Galimah had actual knowledge that exporting firearms to Liberia was prohibited or that Galimah consciously chose to avoid learning that his actions were prohibited. As a result, the evidence warranted the Contested Instruction.

The Contested Instruction also cautioned the jury against convicting Galimah for negligence or some lesser form of mens rea. The instruction stated the jury could only convict Galimah if he "deliberately closed his eyes" to learning his actions were contrary to United States law, and that the jury could not convict Galimah for being "merely negligent, careless, or mistaken" as to the law. The Eighth Circuit has affirmed the use of comparable language. See United States v. Chavez-Alvarez, 594 F.3d 1062, 1068 (8th Cir. 2010); United States v. Clay, 618 F.3d 946, 952-54 (8th Cir. 2010); Eighth Circuit Manual of Model Jury Instructions—Criminal § 7.04 (2011); see also Hiland, 909 F.2d at 1130 (holding willful blindness instruction does not require "high probability" of knowledge language). As a result, the Court finds the Contested Instruction was appropriately given, and Galimah's motion for a new trial is denied.

## IV. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant McHarding Degan Galimah's Motion for New Trial [Docket No. 52] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: April 8, 2013.